IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 07-CR-234 (PLF) |
| NATHAN SMITH | : | |

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL PRODUCTION
OF HANDWRITING EXEMPLARS AND SALIVA AND HAIR SAMPLES

In response to the Government's Motion to Compel Production of Handwriting Exemplars and Saliva and Hair Samples, Mr. Nathan Smith, the defendant, through undersigned counsel, respectfully submits that he has no objection to providing handwriting exemplars, but opposes the government's motion to compel saliva and pulled hair samples because the government has proffered no evidentiary value of such samples. In support of this opposition, counsel submits the following.

**Factual Background**

Mr. Smith is charged in a one count indictment with bank robbery. The charge arose out of an incident that occurred on August 20, 2007, at the PNC Bank. According to the police reports, in relation to the investigation of this incident, the police recovered a ballpoint pen, a white t-shirt, a black jacket, a clipboard and paper. According to the government, the man who allegedly robbed the PNC Bank used or touched these items. The government has not proffered that DNA and/or hair samples have been recovered from any of these items. Nonetheless, the government has moved to compel the production of saliva and pulled hair samples from Mr. Smith for comparison with DNA and hair samples that "may be recovered" from items seized in connection with the charged offense.

**Argument**

The Fourth Amendment implications of government-sponsored bodily intrusions was addressed by the Supreme Court in Schmerber v. California, 384 U.S. 757 (1966). In Schmerber, the Court stated that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Id. at 765. See also Johnson v. Quander, 440 F.3d 489, 493 (D.C. Cir. 2006) (because "there is no question" that compulsory extraction of blood for DNA was search, only issue was whether search was "reasonable"). Building on Schmerber, the Court, in Winston v. Lee, 470 U.S. 753 (1984), outlined the four factors that trial courts should consider when determining the reasonableness of bodily intrusions: (1) the effect on the safety or health of the individual being searched; (2) the impact on the person's dignity, personal privacy, and bodily integrity; (3) the community's interest in fairly and accurately determining the guilt or innocence of a criminal defendant; and (4) the existence of a clear indication that desired evidence would be found if the test were undertaken. Winston, 470 U.S. at 761-62.

The government's request here has a great impact on Mr. Smith's dignity, personal privacy, and bodily integrity. Mr. Smith has a reasonable expectation of privacy in his saliva and the intimate information contained therein. Saliva and the DNA the government seeks is not knowingly exposed to the public, unlike a person's fingerprints, Davis v. Mississippi, 394 U.S. 721 (1969), voice, United States v. Dionisio, 410 U.S. 1 (1973), or handwriting, United States v. Mara, 410 U.S. 19 (1973). DNA contains highly personal information that could reveal genetic disorders, predisposition to disease, family relationships, and other private characteristics otherwise beyond the reach of the government. See Floralynn Einesman, Vampires Among Us:

Does a Grand Jury Subpoena for Blood Violate the Fourth Amendment?, 22 Am. J. Crim. L. 327, 373 (1995).

Moreover, no evidence exists to suggest that useful evidence will be discovered as a result of the seizure of saliva and hair from Mr. Smith. The government has not proffered that it has evidence from the crime scene to compare to evidence seized from Mr. Smith. Without such evidence, the seizure of Mr. Smith's saliva and hair is per se unreasonable.

In In re Lavigne, 641 N.E.2d 1328 (Mass. 1994), the Supreme Judicial Court of Massachusetts considered the very question at issue here. The defendant in that case was charged with murder, and the government sought a blood sample for use in its investigation without offering any evidence that it had relevant samples to which the defendant's blood would be compared. There, the court held that the defendant was entitled to a hearing at which the judge was required to "make findings as to the degree of intrusion and the need for the evidence of the blood sample." Id. at 1331 (internal citation omitted). The court held that the government was required to establish a "nexus between the item seized and criminal behavior." Id. (citing Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967). The court held that an order compelling the defendant to provide a blood sample was unreasonable without the government establishing such a nexus and ordered the return of the blood sample that had already been taken from the defendant.

Similarly, in State v. Acquin, 416 A.2d 1209 (Conn. 1979), the government sought to seize the blood of a defendant in a murder case where the government proffered that it was in possession of multiple items believed to be the murder weapons, both of which bore "reddish sticky" substances that could have been blood. The court, relying in part on Schmerber and

Warden, held that "[i]n the absence of facts establishing, at the very least, that the 'substance' found on the alleged murder weapons was in fact blood, the [trial] court had [in]sufficient facts before it" to determine that there was probable cause to believe the blood seized from the defendant would have a nexus to the crime charged.  Id. at 1211 (emphasis added).

## Conclusion

Because the government has failed to make even a threshold showing that saliva and hair samples could have evidentiary value, the Court should deny the government's motion to compel saliva and hair samples.

        Respectfully submitted,

        /s/
        _____
        Mary Manning Petras
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W.
        Suite 550
        Washington, D.C.  20004
        (202) 208-7500